**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**LIANNA KABBASH on behalf of herself and all
others similarly situated,**

**Plaintiff,**

-vs-                                                            **Case No. A-16-CA-212-SS**

**THE JEWELRY CHANNEL, INC. USA d/b/a
Liquidation Channel,**

**Defendant.**

_____

**O R D E R**

BE IT REMEMBERED on the 7th day of April 2017, the Court held a hearing in the above-styled cause and the parties appeared in person or through counsel. Before the Court are Plaintiff Lianna Kabbash (Plaintiff)'s Motion to Certify Class [#121], Defendant The Jewelry Channel, Inc. USA d/b/a Liquidation Channel (LC)'s Response [#126] in opposition, and Plaintiff's Reply [#131] in support as well as Plaintiff's Amended Class Definition and Scope [#136], LC's Objections [#138] thereto, and Plaintiff's Reply [#144] in support. Having reviewed the documents, the arguments of counsel, the relevant law, and the file as a whole, the Court now enters the following opinion and order DENYING class certification.

**Background**

**I.      Factual History**

LC operates a web-based home shopping network that sells jewelry, gemstones, and related items on its website. Am. Compl. [#89] ¶ 6. LC's corporate headquarters, offices, and employees are all located in Austin, Texas. Order of Feb. 22, 2016 [#53] at 3.

On the website, all of LC's products are advertised in a standard manner. Am. Compl. [#89] ¶¶ 14–15. All items are displayed with photographs, general descriptions, an estimated retail value

(ERV), LC's price, and a bolded black or red box describing the percent savings. *Id.* ¶ 15. When a customer clicks on a product, the ERV, LC's price, and percentage saved appear on a new webpage. *Id.* ¶16. The ERV is often over eighty percent higher than LC's Price. *Id.* When a customer places an item in his or her shopping cart and checks out, the "Order Confirmation" screen lists the total cost and a notice in bold displaying how much money the customer saved (e.g., "You saved $130.00 today!").

*Id.* ¶ 17.

Plaintiff first created a customer account with LC via the website on November 21, 2014. Order of Feb. 22, 2016 [#53] at 1. Before creating her account, Plaintiff was required to click on a box affirming she had read and accepted LC's Terms and Conditions (TOC). *Id.* The TOC provided that:

> These terms of use shall be governed by and construed in accordance with the laws of the State of Texas and the United States of America, without giving effect to any principles of conflicts of law or the United Nations Convention on Contracts for the International Sale of Goods. You agree that any action at law or in equity arising out of or relating to these terms (including the Privacy Policy) shall be filed only in the state or federal courts located in Austin, Travis County, Texas, USA and you hereby consent and submit to the personal jurisdiction of such courts for the purposes of litigating any such action.

Dugar Decl. [#47-7] Ex. 7 (TOC) at 41.

Between November 21, 2014, and November 30, 2014, Plaintiff, a California resident, purchased approximately fifteen items from LC at a total cost of approximately $522.40. Mot. Certify Class [#121] at 7–8. After receiving the jewelry and wearing the items, Plaintiff claims the items began to fall apart. *Id.* at 8.

## II. Procedural History

On May 28, 2015, Plaintiff Lianna Kabbash filed a complaint on behalf of herself and all others similarly situated in federal district court in California.[1] Compl. [#2]. According to Plaintiff, LC inflates the ERV of its products to artificially increase the percentage savings LC advertises. Am. Compl. [#89] ¶ 25. Plaintiff asserts LC's prices are not discounted at all and the ERV is part of a pricing scheme used to induce purchases. *Id.* ¶¶ 25, 27.

In particular, Plaintiff claims LC reverse engineers its ERV to mislead consumers through the following process. Mot. Certify Class [#121] at 5. First, LC determines its price for an item. *Id.* Second, LC calculates an ERV for the item based on specific, predetermined multipliers; items with greater LC prices have larger multipliers. *Id.* Third, LC employees conduct a review of other products to collect comparable products in confirmation of the calculated ERV. *Id.* at 5.

Plaintiff's original complaint alleged the following claims for a nationwide class: (1) negligent misrepresentation, (2) intentional misrepresentation, (3) and unjust enrichment. *Id.* Plaintiff also alleged the following claims for a California class: (1) violation of California's False Advertising Law (FAL), CAL. BUS. & PROF. CODE § 17500, *et seq.*; (2) violation of the California Consumer Legal Remedies Act (CLRA), CAL. CIV. CODE § 1750, *et seq.*; (3) violation of California's Unfair Competition Law (UCL), CAL. BUS. & PROF. CODE, § 17200 *et seq.*; (4) negligent misrepresentation; and (5) intentional misrepresentation. *Id.*

LC filed a motion to dismiss, arguing in part its ERVs and percentage savings displays were non-actionable puffery under California law. Mot. Dismiss [#23] at 9 (citing *In re Century 21-RE/MAX Real Estate Advert. Claims Litig.*, 882 F.Supp. 915, 927 (C.D. Cal. 1994)). LC also argued Plaintiff

---

[1] Plaintiff was originally joined by Angela Hovind, who filed claims on behalf of herself and an Oklahoma class, but the parties stipulated to the voluntary dismissal of Angela Hovind's claims and those of an Oklahoma class. Stipulation of Dismissal [#85] at 1–2.

failed to allege justifiable reliance for her FAL, CLRA, UCL, and misrepresentation claims. *Id.* at 14. Finding LC's ERV and percentage savings displays were statements of fact and whether reliance is justified was a question of fact for the California claims, the California district court denied the motion to dismiss. Order of Nov. 2, 2015 [#41] at 5–6.

LC then filed a motion to transfer venue to the Western District of Texas, asking the California district court to honor the forum selection clause in the TOC. Mot. Transfer [#46] at 1–2. The California district court granted the motion to transfer, conveying the case to this Court. Order of Feb. 22, 2016 [#53] at 8.

After transfer, Plaintiff filed an amended complaint asserting the same claims as in her original complaint for a nationwide class and a California class. *See* Am. Compl. [#89] at ¶¶39–109. Following limited discovery for class certification purposes only, Plaintiff filed a motion to certify class. Mot. Certify Class [#121].

On April 7, 2017, this Court held a hearing, entertaining argument from both parties on choice of law and the motion for class certification. Postponing ruling on Plaintiff's motion for class certification in light of representations made by counsel, the Court authorized Plaintiff to submit an amended class definition and permitted supplemental briefing. Order of Apr. 7, 2017 [#133]. Plaintiff subsequently filed an amended class definition and the parties have now filed supplemental briefing in response. Plaintiff's motion for class certification is now ripe for consideration.

**Analysis**

Plaintiff submits the following amended class definition for certification:

> All persons who, while in California and during the four-year period preceding the initiation of this litigation, purchased an item on LC's website that LC's business records show was advertised with an estimated retail price.[2]

Pl.'s Scope Definition of Class [#136]. Plaintiff also seeks to have herself appointed as the class representative and her counsel appointed as class counsel. Mot. Certify Class [#121] at 2.[3]

## I.    Choice of Law

Before considering Plaintiff's motion for class certification, the Court must decide what law will govern Plaintiff's claims and therefore those of a purported class. LC argues Texas law governs Plaintiff's claims because the TOC contain a choice-of-law provision endorsing Texas law. In contrast, Plaintiff argues the TOC do not require the application of Texas law to Plaintiff's substantive claims, which sound in tort and not contract. Instead, Plaintiff claims California law should apply.

Because this is a diversity case, Texas law governs the choice-of-law analysis. *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004) ("District courts sitting in diversity apply the choice-of-law rules of the forum state.").

Texas courts apply the Second Restatement of Conflict of Laws' (Restatement) "most significant relationship" test to decide choice-of-law issues unless there is a valid choice-of-law clause. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003) (citing *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000)). "Texas law gives effect to choice of law

---

[2] Excluded from the proposed class are: "(1) LC and its subsidiaries, affiliates, officers, and directors; (2) any entity in which LC or any other excluded entity has a controlling interest; (3) LC's legal representatives, predecessors, successors, assigns, and employees; and (4) the judge and staff to whom this case is assigned, and any member of the judge's immediate family." Pl.'s Scope Definition of Class [#136].

[3] At the hearing, Plaintiff recognized she was no longer seeking a nationwide class. Hr'g Tr. [#137] at 43:5–10.

-5-

clauses regarding construction of a contract." *Id.* (citing *In re J.D. Edwards World Sols. Co.,* 87 S.W.3d 546, 549 (Tex. 2002)). However, "[w]hen dealing with narrow choice of law provisions, Texas law requires an issue-by-issue choice of law analysis." *Id.* at 727 (citing *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex.1999)).

The choice-of-law provision in the TOC provides: "These terms of use shall be governed by and construed in accordance with the laws of the State of Texas and the United States of America, without giving effect to any principles of conflicts of law . . . ." TOC at 41. Such a contractual choice-of-law clause is narrow because it governs the construction and interpretation of the contract and does not address the parties' entire relationship. *See Benchmark Elecs., Inc.*, 343 F.3d at 726 (considering a choice-of-law provision stating "Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York . . . ." and finding the provision to be narrow, applying only to the construction and interpretation of the contract).

Here, Plaintiff's claims and those of the purported class do not appear to require construction or interpretation of the TOC. *See id.* (holding claims of fraud and negligent misrepresentation were not governed by the narrow choice-of-law provision). Although LC alleges Plaintiff is merely pleading around a contract claim by asserting tort claims, the essence of Plaintiff's claim sound in tort rather than contract. *See* Hr'g Tr. [#137] at 13:7–15:1. Plaintiff's allegation LC's ERVs are misleading is the crux of her complaint. *See* Am. Compl. [#89] at 1 (summarizing Plaintiff's allegations that LC misrepresents the nature and value of its items through its ERV and percentage saved). As a result, the Texas choice-of-law provision in the TOC does not govern Plaintiff's tort claims. *See Floyd v. CIBC World Markets, Inc.,* 426 B.R. 622, 639 (S.D. Tex. 2009) (finding the parties' contractual choice-of-law provision did not apply to tort or non-contractual claims and conducting a choice-of-law analysis).

LC argues "Plaintiff's claims arise out of and relate to the TOC, as [the California district court] already held in enforcing the TOC and transferring this case to this district." Resp. Mot. Certify Class [#126] at 7. Although the TOC specify the parties "agree any action at law or in equity arising out of or relating to [the TOC] (including the Privacy Policy) shall be filed only in the state or federal courts located in Austin, Travis County, Texas, USA and . . . consent and submit to the personal jurisdiction of such courts[,]" the California district court correctly termed this wording the "Forum Selection Clause." Order of Feb. 22, 2016 [#53] at 2. The California district court limited its analysis to the validity of the Forum Selection Clause and expressly noted "Texas courts could very well find California law should apply." *Id.* at 6–7. LC's argument the California district court already decided Texas law should govern all disputes erroneously relies on a clause pertaining solely to forum selection and consent to personal jurisdiction.

LC also contends that even if the TOC's choice-of-law provision does not control, there is no conflict between the laws of California and Texas pertaining to this dispute and the law of the forum state should govern. Resp. Mot. Certify Class [#126] at 7; *see Schneider Nat. Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) (reiterating that if the laws of the states do not conflict, then no choice-of-law analysis is necessary and the forum state's law applies). However, while the Texas Deceptive Trade Practices Act (DPTA) contains many identical provisions to California's CLRA, there are significant differences between the two states' consumer protection laws. *Compare Glenn v. Hyundai Motor Am.*, No. SACV152052DOCKESX, 2016 WL 3621280, at *7 (C.D. Cal. June 24, 2016) (finding material differences in the remedies between Texas and California consumer protection laws) *with Dajani v. Dell Inc.*, No. C 08-5285 SI, 2009 WL 815352, at *3 (N.D. Cal. Mar. 26, 2009) (concluding there is no conflict between Texas and California law but examining only analogous provisions and not considering remedies). For instance, Texas's consumer protection law appears to

encompass much broader remedies than California's laws. *Glenn*, 2016 WL 3621280, at *7. Similarly, the statute of limitations between the states' laws differ. *Compare* CAL. CIV. CODE § 1783 (three-year statute of limitations) *and* CAL. BUS. & PROF. CODE § 17208 (four-year statute of limitations) *with* TEX. BUS. & COM. CODE § 17.565 (two-year statute of limitations).[4]

Most significantly, California appears to have a more permissive standard for proving reliance in a class action context than Texas. *Compare In re Tobacco II Cases,* 46 Cal. 4th 298, 320 (2009) ("[C]ourts repeatedly and consistently . . . hold that relief under the UCL is available without individualized proof of deception, reliance and injury.") *and Mass. Mut. Life Ins. Co. v. Superior Court,* 97 Cal. App. 4th 1282, 1292–93 (2002) ("[I]f the trial court finds material misrepresentations were made to the class members [for a CLRA case), at least an inference of reliance would arise as to the entire class.") *with Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 693 (Tex. 2002) (emphasizing that all the class members suing under the Texas DPTA must prove the same standard of reliance as if each sued individually). Thus, the Court must perform a choice-of-law analysis under the Restatement's most significant relationship test.

In executing that test, the Court's analysis is guided by three Restatement sections. *See Benchmark Elecs., Inc.,* 343 F.3d at 727–28; *Floyd,* 426 B.R. at 640–41. Section 6 provides seven general factors to be considered by the Court in making choice-of-law determinations.[5] *Id.* Section 145(2) lists four additional factors to be considered when applying the general choice-of-law principles

---

[4] Although LC indicated it would waive any difference between Texas's and California's statute of limitations, the Court nevertheless finds the variation in the states' statute of limitations a significant difference between the states' consumer protection laws. *See* Hr'g Tr. [#137] at 17:2–10.

[5] The § 6 factors are "(a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971).

of § 6 to tort cases.[6] *Id.* Finally, § 148 discusses factors to consider where the claims concern false representations.[7] *Id.*

Consideration of the relevant Restatement factors demonstrates California law should govern Plaintiff's tort claims. Based on the current record, only two factors favor the application of Texas law to this dispute: Texas is LC's place of business and LC made the representations from Texas. Am. Compl. [#89] ¶6.

On the other hand, Plaintiff is a California resident, she relied on LC's representations in California, and she purchased the items in California. *Id.* ¶5; Pl.'s Reply [#131] at 4. In addition, California has a relatively stronger interest in the determination of the particular issues than Texas. The policy behind the FAL, CLRA, and UCL is one of consumer protection. *Anunziato v. eMachines, Inc.,* 402 F. Supp. 2d 1133, 1137 (C.D. Cal. 2005) ("The goal of both the UCL and the [false advertising law (FAL) ] is the protection of consumers."); CAL. CIV. CODE § 1760 (stating the purpose of the CLRA is "to protect consumers against unfair and deceptive business practices"). Because Plaintiff is a California consumer, California has a greater interest than Texas in protecting her. *See Browne v. World Christian Church,* No. A-99-CA-784 AA, 2001 WL 681256, at *2 (W.D. Tex. Apr. 5, 2001)

---

[6] The additional factors to consider in a tort case are "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil [sic], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971). These factors are to be evaluated according to their relative importance with respect to the particular issue. *Id.*

[7] Section 148 provides that "[w]hen the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties: (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil [sic], residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148(2) (1971).

(citing *Siskind v. Villa Found. for Educ., Inc.,* 642 S.W.2d 434 (Tex.1982)) ("It would not be unreasonable to apply Texas law to protect a Texas consumer when the Louisiana company made such an effort to conduct business in Texas."); *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 593–94 (9th Cir. 2012) (citing *Zinn v. Ex–Cell–O Corp.,* 148 Cal. App. 2d 56, 80 n. 6 (1957) (concluding in fraud case that the place of the wrong was the state where the misrepresentations were communicated to the plaintiffs, not the state where the intention to misrepresent was formed or where the misrepresented acts took place)).

Evaluation of the parties' expectations also favors the application of California law. While the parties anticipated the possibility of being subject to Texas law in some capacity by adopting the Texas choice-of-law provision in the TOC, LC moved for dismissal under California law earlier in this lawsuit. Mot. Dismiss [#23] at 9 (citing *In re Century 21-RE/MAX Real Estate Advertising Claims Litigation,* 882 F.Supp. at 927). At no point in its motion to dismiss or reply did LC object to the application of California law, indicate Texas law should govern the dispute, or even suggest the need to consider what law applied. *See* Mot. Dismiss [#23]; Reply Mot. Dismiss [#33]. As LC submitted to California law and relied solely on it, the Court finds the application of California law will not frustrate the parties' expectations. *See Lott v. Levitt,* 556 F.3d 564, 568 (7th Cir. 2009) ("[A party] is not entitled to get a free peek at how his dispute will shake out under Illinois law and, when things don't go his way, ask for a mulligan under the laws of a different jurisdiction.").[8]

In sum, because a majority of the Restatement factors strongly favors the application of California law, California law will be applied to the proposed class's tort claims and used to evaluate Plaintiff's motion for class certification.

---

[8] Although Plaintiff argues LC's reliance on California law in its earlier motion to dismiss is tantamount to a waiver of the argument Texas law should apply, the Court expressly declines to find waiver occurred. Instead, the Court only holds the application of California law will, at the very least, not frustrate the parties' expectations.

## II.    Class Certification

### A.    Legal Standard

The Federal Rules of Civil Procedure allow a case to proceed as a class action if the class and the named representative meet the prerequisites of Rule 23(a) and the case is of a type enumerated in Rule 23(b). District courts "must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Stirman v. Exxon Corp.*, 280 F.3d 554, 561 (5th Cir. 2002) (internal quotation marks omitted). Such analysis may include consideration of the merits of the underlying claim, but only to the extent the merits are relevant to determining whether the Rule 23 certification requirements are satisfied. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S.Ct. 1184, 1194–95 (2013).

Under Rule 23(a), a class member seeking to sue as a representative of the entire class must demonstrate the following: (1) the class is so numerous joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representatives are typical of those of the class (typicality); and (4) the representatives will fairly and adequately protect the interests of the class (adequacy). FED. R. CIV. P. 23(a); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

Assuming the prerequisites of Rule 23(a) are satisfied, to proceed as a class action, the case must also fall into one of the categories enumerated in Rule 23(b). Here, Plaintiff relies on the categories listed in Rule 23(b)(2) and (3).

Under Rule 23(b)(2), a court may certify a class "if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole." *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n,* 624 F.3d 185, 198 (5th Cir. 2010) (quoting FED. R. CIV. P. 23(b)(2)). Rule 23(b)(2) seeks to redress what are group, as opposed to individual, injuries; generally, the uniformity of the injury across the class renders

notice and opt-out provisions for classes certified under this subsection unnecessary. *Id.* But injunctive relief is not appropriate for a whole class when the final relief predominately relates to money damages. *Id.*

In order to certify a class under Rule 23(b)(3), "a court must find 'that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S. Ct. 2179, 2184 (2011) (quoting FED. R. CIV. P. 23(b)(3)).

## B. Application

The Court finally turns to the central question: whether Plaintiff's proposed class may be certified. First, the Court will consider the four factors embodied in Rule 23(a): numerosity, commonality, typicality, and adequacy. *Amchem*, 521 U.S. at 613. Second, the Court will turn to the two Rule 23(b) categories Plaintiff claims the proposed class satisfies.

### 1. Rule 23(a) Factors

#### i. Numerosity

The first prerequisite to class certification under Rule 23(a) is the existence of a class "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). A number of facts other than the actual or estimated number of purported class members may be relevant to the numerosity question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

Plaintiff cites LC's sales data to show there are thousands of persons in the state of California who fall into Plaintiff's purported class definition. Mot. Certify Class [#121] at 14. While LC argues

numerosity is not satisfied because Plaintiff has identified no other individual plaintiffs, the sales data is sufficient to demonstrate numerosity. *See Delarosa v. Boiron, Inc.,* 275 F.R.D. 582, 588 (C.D. Cal. 2011) ("sales volume in California would support a finding that Plaintiff met her burden of establishing numerosity"). Accordingly, the Court finds the numerosity requirement satisfied in this case.

### ii. Commonality

The commonality requirement requires the presence of "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The test for commonality is not demanding. *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 625 (5th Cir. 1999). There must simply "be at least one issue whose resolution will affect all or a significant number of the putative class members." *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982) (footnote omitted); *see also In re Dell Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834, at *3 (W.D. Tex. June 11, 2010) (reiterating that commonality only requires one factual or legal issue common to substantively all class members).

"District courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL and UCL." *Spann v. J.C. Penney Corp.,* 307 F.R.D. 508, 518 (C.D. Cal. 2015) (quoting *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 495 (C.D. Cal. 2012) (collecting cases)). This case presents a number of common questions of law or fact for the alleged class. Common questions include, but are not limited to: (1) whether LC's price-comparison advertising scheme was false or misleading within the meaning of the UCL, FAL, or CLRA; (2) whether LC's ERV and percentage saved were likely to deceive a reasonable consumer; and (3) how to appropriately calculate the ERV. *See id.* These common questions of law and fact are susceptible to common proof, such as testimony by Plaintiff and experts examining LC's pricing policies and data. *See id.*

LC does not argue commonality is not established, and because there is at least one issue whose resolution will affect all putative class members, the Court finds commonality satisfied.

-13-

### iii. Typicality and Adequacy

LC collapses typicality and adequacy in its response. Resp. Mot. Certify Class [#126] at 17–18. The typicality requirement places on the lead plaintiff the burden of showing "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). Like commonality, "the test for typicality is not demanding." *Mullen*, 186 F.3d at 625. For typicality, "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (citation omitted).

The adequacy requirement ensures "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The relevant factors are the "zeal and competence" of counsel[9] and the willingness and ability of the plaintiff to take an active role in controlling the litigation. *Stirman*, 280 F.3d at 563.

LC contends typicality and adequacy cannot be established here for two reasons. First, LC claims because Plaintiff cannot show she actually relied on LC's pricing scheme, she cannot demonstrate standing, typicality, or adequacy as a class representative. In support of its argument, LC cites to sections of Plaintiff's deposition indicating Plaintiff relied on factors such as attractiveness and low prices, rather then the ERV, when purchasing items from LC. Resp. Mot. Certify Class [#126] at 5 (citing Mot. Certify Class [#121-10] (Kabbash Dep. Tr.) at 37:1–14, 43:1–21). Second, LC alleges Plaintiff cannot meet typicality because Plaintiff only complained about the quality of LC's products when she experienced a defect, i.e. when the items began to fall apart. Hr'g Tr. [#137] at 60:7–20.

---

[9] LC does not contend Plaintiff's counsel is inadequate in any way.

Thus, according to LC, if the items had met Plaintiff's expectations she would not have filed a claim. *Id.* Neither of LC's arguments is persuasive.

Specifically, while Plaintiff could not remember the exact ERVs or percentages saved for the items she purchased, she stated she was motivated by the great deal and low price. Kabbash Dep. Tr. at 43:10–21. Plaintiff also repeatedly testified she was disappointed to discover the items she purchased were not worth what she had expected. Such evidence is enough, for purposes of certification, to demonstrate Plaintiff relied on LC's ERV and discounted prices. *See Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2552 n.6 (2011) (emphasizing that a district court only conducts an inquiry into the merits of a suit to the extent necessary to determine the propriety of certification).

Furthermore, how Plaintiff discovered the alleged poor quality of her items concerns the factual context of her claims and not the claims themselves. In examining typicality, the Court only looks to whether a class representative's claims arise from a similar course of conduct and share the same legal theory. *Stirman,* 280 F.3d at 562. Factual differences, such as whether a consumer discovered the alleged misrepresentation upon receiving LC's items or upon using LC's items, do not defeat typicality. *See id.*

Consequently, the Court finds typicality and adequacy satisfied.

## 2. Rule 23(b) Categories

### i. Rule 23(b)(2)—Injunctive Relief

Plaintiff argues certification under Rule 23(b)(2) is appropriate because "LC's inflated ERVs have affected all Class Members identically" and represent a standard policy generally applicable to the entire class. Mot. Certify Class [#121] at 13. LC argues Plaintiff's claims for monetary damages predominate over her claims for injunctive or declaratory relief. Resp. Mot. Certify Class [#126] at 15–16. The Court agrees with LC.

While Plaintiff does request injunctive relief, Plaintiff also requests actual damages, restitution, disgorgement of profits, and even punitive damages. Am. Compl. [#89] at 25. Although a request for monetary damages does not automatically defeat a claim for Rule 23(b)(2) certification, monetary relief predominates in Rule 23(b)(2) class actions unless it is "incidental" to the requested injunctive relief. *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir. 1998). Monetary damages are incidental where they flow directly from liability to the class as a whole on the claims forming the basis for injunctive or declaratory relief and do not depend on differences in each class member's circumstances. *Id.*

Here, monetary relief is the primary goal of the lawsuit. In particular, Plaintiff chiefly asks that each purported class member receive a full refund. Am. Compl. [#89] ¶ 94. Such a request for relief is not incidental to a claim for injunctive relief and will greatly vary among class members. Thus, class certification under Rule 23(b)(2) is inappropriate.

### ii. Rule 23(b)(3)—Predominance and Superiority

Analysis under Rule 23(b)(3) breaks into two tests: the predominance inquiry and the superiority inquiry. *See* FED. R. CIV. P. 23(b)(3). The predominance inquiry tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation. *Torres v. S.G.E. Mgmt., L.L.C.,* 838 F.3d 629, 635–36 (5th Cir. 2016). In essence, the inquiry requires the court to weigh common issues against individual ones and determine which category is likely to be the focus of a trial. *Crutchfield v. Sewerage & Water Bd. of New Orleans,* 829 F.3d 370, 376 (5th Cir. 2016). The superiority inquiry asks whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. FED. R. CIV. P. 23(b)(3).

The predominance inquiry "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc.,* 131 S. Ct. at 2184. Here, for purposes of class certification, the

proposed class's claims can be collectively evaluated through the following three elements: (1) a misrepresentation, (2) reliance, and (3) damages. *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) (noting the elements of claims under the UCL, FAL, and CLRA are "materially indistinguishable" for class certification purposes); *Hobbs v. Brother Int'l Corp.*, No. CV 15-1866 PSG(MRWX), 2016 WL 4734394, at *3 (C.D. Cal. Sept. 8, 2016) (conducting a predominance inquiry for negligent misrepresentation and California statutory claims). In short, as further described below, the Court finds the proposed class action does not meet the predominance requirement as individual issues predominate over common issues for each of element of proposed class's claims.

First, because each member of the proposed class purchased different items from LC at different times, class members were exposed to different ERVs and corresponding percentages saved. Thus, with no uniform representation, the misrepresentation element would require a substantial amount of individualized proof to show each ERV and associated percentage saved was false or misleading.

Plaintiff argues the veracity of each ERV and percentage saved need not be examined because LC's pricing method provides evidence of a misleading policy or scheme common to all class members. Mot. Certify Class [#121] at 9–11. However, Plaintiff relies on *Spann*, which expressly conditioned finding a common question concerning misrepresentation on the allegation defendant misrepresented its own former prices. *See* 307 F.R.D. at 527 ("Using defendant's prices to determine the prevailing market price, it is clear that common questions underlying plaintiff's FAL claim predominate."). Unlike here, common questions predominated in *Spann* because defendant's own prices could be used as a measure of the prevailing market price and it was unnecessary to engage in

-17-

the more complex analysis of defining the market, determining what items were similar to the one at issue, and ascertaining the prices at which such similar items were sold. *Id.* at 520–29.

Rather than *Spann*, the Court finds the reasoning in *Mahfood* instructive here. *See Mahfood v. QVC, Inc.,* No. SACV06-0659AGANX, 2008 WL 5381088, at *4 (C.D. Cal. Sept. 22, 2008) (denying class certification because individual issues predominated over common questions). In that case, the plaintiff sued QVC, a television retail company, alleging QVC's pricing system was misleading and claiming violation of the CLRA, breach of contract, unjust enrichment, and violation of the UCL. *Id.* at *1. The *Mahfood* court found the plaintiff needed to show the product was available from "other retailers in the geographic area of the consumer's purchase at or about the time of the purchase for appreciably less than the amount QVC listed as the Retail Value" to show QVC's listed Retail Value was misleading. *Id.* at *4 (internal quotation marks omitted). Because there existed "far too much variation in individual purchasing experiences[,]" the *Mahfood* court concluded individual issues predominated. *Id.* at *5.

Like the proposed class in *Mahfood*, the proposed class here features far too much variation in individual purchasing experiences. Because the evidence necessary to prove the ERVs and percentages saved misleading would vary among class members, the Court finds individual questions predominate on whether LC misrepresented the value of its products.

Second, individual questions also predominate concerning the element of reliance. *See Lucas v. Breg, Inc.,* No. 15-CV-00258-BAS-NLS, 2016 WL 6125681, at *12 (S.D. Cal. Sept. 30, 2016) (collecting cases to demonstrate claims under the UCL, FAL, and CLRA require a showing of reliance, of varying specificity, on the alleged misrepresentations). While, as discussed above, a showing of individualized reliance is not always required for these causes of action, "the question of likely deception does not automatically translate into a class-wide question." *Berger v. Home Depot USA,*

*Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (citing *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1024 (9th Cir. 2011) ("We do not, of course, suggest that predominance would be shown in every California UCL case. For example, it might well be that there was no cohesion among the members because they were exposed to quite disparate information from various representatives of the defendant.")).

Under California law, reliance may be presumed on a class-wide basis "when the same material misrepresentations have been actually communicated to each member of a class." *Knapp v. AT & T Wireless Servs., Inc.*, 195 Cal. App. 4th 932, 946 (2011) (quoting *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 834 (2009)). However, in this case, there is no allegation the same material misrepresentation was communicated to each putative class member. As previously discussed, each consumer bought different products with different ERVs and percentages saved. Thus, the degree to which a consumer relied on an item's ERV and percentage saved likely varies from class member to class member; consequently, reliance is not susceptible to common proof. *See Lucas*, 2016 WL 6125681 at *12 ("Although a presumption of reliance may hold in the prototypical consumer protection case where a consumer buys a product against the backdrop of a uniform, broad-based advertising campaign, in this case the common question of reliance inevitably breaks down into individualized inquiries.").

Emphasizing that California law does not require individualized proof of reliance, Plaintiff argues reliance can be established through common proof because only a showing that members of the public are likely to be deceived is required. Mot. Certify Class [#121] at 9–10. Plaintiff claims LC's comprehensive pricing strategy is likely to deceive members of the public and is thus sufficient to establish a presumption of reliance for all class members. *Id.*

Yet, the authorities Plaintiff cites do not support her argument. *See id.* (first citing *Bruno v. Quten Research Inst., LLC,* 280 F.R.D. 524, 537 (C.D. Cal. 2011) (evaluating facts where defendant

-19-

made the generally uniform representation the single product at issue featured "6X BETTER ABSORPTION"); then citing *Lucas v. Breg, Inc.*, No. 15-cv-00258-BAS-NLS, 2016 U.S. Dist. LEXIS 137117, at \*37 (S.D. Cal. Sep. 30, 2016) (denying class certification as individualized inquires weighed against finding predominance); also citing *In re Tobacco II Cases,* 46 Cal. 4th at 328 (remanding case to reevaluate class certification where prior cases demonstrated extensive, decades-long campaign by the tobacco industry to conceal health risks of smoking); then quoting *Stearns*, 655 F.3d at 1024 (concluding the district court did not err in finding class could not be certified as there was no showing of material misrepresentations or omission to the whole class); citing *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 254 (2011) (finding the trial court erred in granting judgment on the pleadings without leave to amend and not examining the issue of class certification); and finally citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317 (2011) (determining plaintiffs established standing where they alleged they would not have purchased product but for "Made in U.S.A." label)).

At most, Plaintiff's authority merely reiterates the proposition individualized reliance is not required if a plaintiff can show a material misrepresentation was made to the entire class. *See id.* Here, Plaintiff cannot do so as, like in *Mahfood,* there is far too much variation in individual purchasing experiences. *See* 2008 WL 5381088, at \*4.

Third, the questions surrounding damages in this case inevitably break down into individualized inquiries. Plaintiff requests a full refund for each purported class member, but such relief would create a windfall for customers who were satisfied with LC's products. *See* Am. Compl. [#89] ¶ 94. And a refund is not a precise fit with Plaintiff's theory of liability where customers bought products at different times, for different prices, and for different reasons. *Spann,* 307 F.R.D. at 529 ("[I]n order to satisfy the predominance requirement, plaintiff must present a damages model that is

consistent with her liability case, and the court 'must conduct a rigorous analysis to determine whether that is so.'" (quoting *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013)). For instance, where a customer was enticed to buy an item from LC as opposed to other vendors because of the ERV and the associated percentage saved but had already decided on a particular item, an accurate measure of damages would be the difference between the allegedly misrepresented ERV and an accurate retail value. Such a damage calculation would capture the expectational harm and would require an assessment of the true retail value. By contrast, a consumer who would not have bought an item but for LC's representations might well seek a full refund. Furthermore, where a class member seeks a refund for an item now well used, some adjustment to the refund amount might be necessary.

Citing California law, Plaintiff argues there is no need for individualized inquiries or proof for damages. Reply Mot. Certify Class [#131] at 8–9 (citing *Kwikset Corp.*, 51 Cal. 4th at 335; and then citing *Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO (RNBx), 2015 U.S. Dist. LEXIS 42545, at *15 (C.D. Cal. Mar. 23, 2015)). But again, Plaintiff's citations, and therefore her argument, are misguided. The *Kwikset* court only examined restitution as it related to standing under the UCL; the court said nothing about the relationship between damages questions and class certification. *Kwikset Corp.*, 51 Cal. 4th at 328–37. And citing the *Spann* court's order denying summary judgment, Plaintiff fails to note, in the order granting class certification, the *Spann* court explicitly emphasized its finding "plaintiff has presented evidence that every dollar she spent was a result of JCPenney's alleged false advertising." *Spann* 307 F.R.D. at 529 (internal quotation marks and citation omitted). Plaintiff presents no such evidence and makes no such claim here.

Furthermore, while the Fifth Circuit declared the need for individualized calculations not "fatal to class certification," it conditioned finding predominance satisfied in such cases upon a showing that "virtually every issue prior to damages is a common issue." *In re Deepwater Horizon*, 739 F.3d 790,

-21-

815–16 (5th Cir. 2014). Accordingly, the damages element, in combination with the other elements of Plaintiff's claims, is comprised of primarily individual questions not favorable to class–wide resolution.

For these reasons, the Court finds predominance not satisfied. As the proposed class action fails to satisfy the predominance requirement, the Court declines to determine whether the superiority requirement is met.

### Conclusion

Although Plaintiff's claims satisfy the Rule 23(a) requirements for class certification, Plaintiff's claims do not meet the more demanding 23(b) requirements. In particular, certification under 23(b)(2) is not appropriate because Plaintiff's claims for monetary damages predominate over her claims for injunctive or declaratory relief. Likewise, because the elements of the purported class's claims—whether LC made misrepresentations, whether class members relied on the alleged misrepresentations, and the extent of resulting damages—predominately feature individualized inquiries over common questions, certification under Rule 23(b)(3) is improper. Thus, Plaintiff's allegations do not meet the Rule 23(b) requirements, and class certification is denied.

Accordingly,

IT IS ORDERED that Plaintiff Lianna Kabbash's Motion for Class Certification [#121] is DENIED.

SIGNED this the _7th_ day of June 2017.

_Sam Sparks_

SAM SPARKS
UNITED STATES DISTRICT JUDGE

-22-